# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAFAEL MACIEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 2968 |
| | ) |
| JO ANNE B. BARNHART, | ) Wayne R. Andersen |
| Commissioner of the Social Security | ) District Judge |
| Administration, | ) |
| | ) |
| Defendant. | |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, we grant the plaintiff's motion for summary judgment and remand the case to the Commissioner of the Social Security Administration.

## BACKGROUND

In 1994, the plaintiff, Rafael Maciel, was misdiagnosed with carcinoma. This misdiagnosis led to the amputation of his left foot above the metatarsal, the area between the instep and the toes. Prior to his amputation, the plaintiff held jobs including machine operator, laborer, dishwasher, construction worker, and janitor. Plaintiff has not held a job since the time of his amputation.

Plaintiff applied for Disability Insurance Benefits ("DIB") in 2000, alleging that he became disabled September 30, 1995. Doctors Peter Biale and Firooz Pak examined plaintiff on behalf of the Social Security Administration ("SSA"). Dr. Biale indicated that plaintiff had a tender stump. Additionally, Biale observed that the muscles in the plaintiff's left leg were weak and atrophied, he used a cane for balance and walking, and he could not walk more than fifty feet without his cane.

Dr. Biale's findings were similar to those of Dr. Pak, who also noted that plaintiff's gait was "fairly steady." Plaintiff managed his pain with Naproxen, an over-the-counter anti-inflammatory.

The defendant, Jo Anne Barnhart, Commissioner of the Social Security Administration, acting through her agents, denied the plaintiff's DIB application and request for reconsideration thereof. Plaintiff then requested a hearing, which was conducted on August 7, 2002, before an administrative law judge ("ALJ"). During the hearing, it was established that the plaintiff could lift five pounds frequently and ten pounds occasionally, sit for six hours out of an eight hour day, and stand or walk about two hours out of an eight-hour day. The plaintiff testified that he often took public transportation alone, walked to the corner store in good weather, and drove both himself and family members to various locations. However, the plaintiff explained that he did not go outside when the weather was cold or icy.

At the hearing, the ALJ also questioned Doctor Donald Charous, a medical expert. Dr. Charous testified that plaintiff's amputation of his left foot below the ankle was a severe impairment, but did not meet or equal any impairment in the Listings of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("The Listings"). The ALJ also questioned Dr. Charous as follows:

> Q: Ability to walk?
> A: Well, that's limited. They—
> Q: One to two blocks?
> A: —the exhibits indicate that he can't walk more than 50 feet without a cane.
> Q: Uneven surfaces?
> A: ... Oh, I would think that would give him even more difficulty.
> Q: Balance?
> A: He has poor balance, your Honor.
> Q: Ice and snow?

A. That's an even greater problem.

R.328

The ALJ found that the plaintiff was not entitled to Social Security benefits. The most pertinent section of the ALJ's opinion reads:

> After a review of the medical evidence, as well as the claimant's testimony, the Judge concludes that claimant suffers from above the ankle amputation of the left foot due to melanoma and diabetes mellitus type II, which are considered as "severe" impairments under the Social Security Act, in that they more than minimally affects his ability to engage in basic work activity (Exhibit 1F-13F).
>
> However, the record does not establish that the claimant has any impairment, or combination of impairments, which meets or equals the requirements in [the Listings]. Therefore, it is next necessary to determine the claimant's residual functioning capacity in order to evaluate whether he is able to return to past work or any work existing in significant numbers in the national economy.

ALJ Opinion at 2.

On October 19, 2002, the Appeals Council denied plaintiff's request for a review, thereby rendering the ALJ's decision the final decision of the Commissioner.

## **STANDARD OF REVIEW**

The ALJ's factual findings are conclusive if they are supported by substantial evidence. 42 U.S.C. 405(g). "Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1979).

Remand to the ALJ is appropriate if the "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review...." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). In other words, the ALJ "must build an accurate and logical bridge from the evidence to her

3

conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). However, "[w]e recognize that even a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." *Brindisi v. Barnhart,* 315 F.3d. 783, 787 (7th Cir. 2003) (internal citations and quotations omitted).

## Analysis

In order to establish a disability, plaintiff must show he is unable to engage in any substantial gainful activity due to the existence of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The plaintiff's impairments must also prevent him from not only doing his previous work, but any other work existing in significant numbers in the economy. *See,* 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant can engage in any substantial gainful activity, the SSA regulations prescribe a five step analysis. The analysis asks whether the claimant (1) is presently employed; (2) has a severe impairment; (3) has an impairment that is listed, or equal to a listing, in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) is able to perform their past relevant work; and (5) is able to perform any other work within the national and local economy. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004), *citing, Stevenson v. Chater,* 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920. If the claimant's condition meets or equals a listing, the inquiry ends and a finding of a disability is warranted. 20 C.F.R. §404.1520(a)(4)(iii).

One of many "listings" a claimant can seek disability under is Listing 1.05(B), which requires that the claimant have an amputation of "one or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate

4

effectively, as defined in Section 1.00(B)(2)(b), which have lasted or are expected to last for at least 12 months." 20 CFR Pt. 404, Subpt. P, App. 1, §1.00(B)(2)(b). Section 1.00(B)(2)(b) provides the following definitions for effective and ineffective ambulation:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the *inability to walk a block at a reasonable pace on rough or uneven surfaces*, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR Pt. 404, Subpt. P, App. 1, §1.00(B)(2)(b) (emphasis added).

A claimant who uses only one cane or crutch can meet the requirements for ineffective ambulation. As §1.00(B)(2)(b) makes clear, the use of a walker, two canes, or two crutches are just examples of impairments that conclusively establish an inability to ambulate effectively. Moreover, the SSA has clarified that "if [a claimant] who uses [only] one cane or one crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing." Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010, 58,013 (Nov. 19, 2001).

The Supreme Court has stressed that "for a claimant to show that his impairment matches

5

a listing it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A close look at Listing 1.05(B) shows that it requires: (1) an amputation of one or both lower extremities at or above the tarsal region, (2) with "stump complications," (3) resulting in a "medical inability" to use a prosthetic device (4) such that the claimant is unable to ambulate effectively.

It is undisputed that plaintiff's amputation meets the first requirement. As for the second requirement, the record shows that plaintiff has a tender stump, but little else is discussed. The third requirement is only discussed to the extent that the ALJ noted that plaintiff had been fitted for multiple different prosthetic devices due to voluntary weight loss. The real gravamen of the third requirement (as well as the entire listing) is whether complications stemming from the amputation render the plaintiff unable to ambulate effectively.

Evidence was presented at the hearing that cast doubt upon plaintiff's ability to ambulate effectively. Dr. Charous testified that uneven surfaces would give the plaintiff "even more difficulty" than walking without a cane. It is possible that Dr. Charous's opinion related simply to plaintiff's ability to walk on uneven surfaces without a cane. However, immediately prior to making this comment, Dr. Charous established that plaintiff's ability to walk without a cane was extremely limited. Accordingly, it is quite possible Dr. Charous meant plaintiff could not walk on uneven ground, even with the use of a cane.

As discussed above, an inability to walk on uneven ground, or walk a block at a reasonable pace, constitutes ineffective ambulation. Likewise, a "tender stump" years after amputation is a possible "stump complication." If plaintiff had stump complications and was unable to ambulate

effectively, he met all other requirement of Listing 1.05(B) and was disabled.

The ALJ's decision did not provide an explanation we can rely upon to determine that plaintiff did not meet Listing 1.05(B). Instead, it simply set forth that "the record does not establish that the claimant has any impairment, or combination of impairments, which meets or equals the requirements in [the Listings]. Therefore, it is next necessary to determine the claimant's residual functioning capacity in order to evaluate whether he is able to return to past work or any work existing in significant numbers in the national economy." After this brief statement the ALJ turned to the question of the plaintiff's residual functioning capacity.

We can think of several explanations why plaintiff's tender stump and Dr. Charous's statement that uneven surfaces would give the plaintiff difficulty do not meet Listing 1.05(B). However, the ALJ's opinion provided none. We cannot substitute our judgement for that of the ALJ. If the ALJ's opinion is "devoid of any analysis that would enable judicial review," *Brindisi*, 315 F.3d at 786, we must remand the case. In the instant case, the ALJ's opinion was extremely brief on the topic of whether plaintiff met or equaled Listing 1.05(B). The opinion failed to "build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon*, 270 F.3d at 1176. As such, we must remand the case.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary [9-1] is granted and this case is remanded to the Commissioner of the Social Security Administration. This is a final order.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: December 20, 2015